# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 1999-DR-00302-SCT

*JUSTIN UNDERWOOD*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/25/1995 |
| TRIAL JUDGE: | HON. SAMAC S. RICHARDSON |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JAMES CRAIG |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: MARVIN L. WHITE, JR. |
| DISTRICT ATTORNEY: | JOHN KITCHENS |
| NATURE OF THE CASE: | CIVIL - DEATH PENALTY - POST CONVICTION |
| DISPOSITION: | LEAVE TO SEEK POST CONVICTION RELIEF DENIED - 12/01/2005 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**SMITH, CHIEF JUSTICE, FOR THE COURT:**

¶1.     Justin Underwood was indicted by a grand jury in Madison County, Mississippi, in 1994. He was charged with the February 15, 1994, capital murder of Virginia Ann Harris while engaged in the commission of the crime of kidnapping in violation of Miss. Code Ann. § 97-3-19(2)(e) (Supp. 1993). Underwood's trial began on May 22, 1995. On May 24, 1995, a jury convicted him of capital murder. On May 25, 1995, he was sentenced to death. Underwood

filed a motion for judgment notwithstanding the verdict or, in the alternative, a motion for new trial on June 2, 1995. Both motions were denied on July 24, 1995.

¶2. Underwood then made a direct appeal to this Court to consider the following ten issues on direct appeal:

I. **Whether the Trial Court Erred in Quashing the Indictment on the Ground That Underwood Was at the Time and During Commission of the Offense Suffering from Insanity;**

II. **Whether the Prosecution Strikes for Cause of Jurors Based Solely upon Their Views on Capital Punishment Systematically Excluded Blacks from the Jury and Violated Underwood's Right to a Fair Trial;**

III. **Whether the Trial Court Erred in Admitting the Involuntary Confession of Underwood into Evidence in Violation of the Fifth and Sixth Amendments to the United States Constitution;**

IV. **Whether the Trial Court Erred, in Violation of the Constitutional Rights of Appellant, in Allowing into Evidence a Statement Made by Appellant Underwood That the State upon Charging Him with Burglary Would Subsequently Charge Him with the Murder of the Victim;**

V. **Whether the Prejudicial Effect of the Introduction of the Videotape of the Crime Scene Depicting the Victim's Body Outweighed the Tape's Probative Value;**

VI. **Whether the Prejudicial Effect of the Introduction of Numerous Gruesome Photographs Outweighed Their Probative Value and Constitutes Reversible Error by the Lower Court;**

VII. **Whether the Jury's Finding That the Victim Was Kidnapped by Appellant Was Against the Overwhelming Weight of the Evidence and Was Not Established Beyond a Reasonable Doubt;**

VIII. **Whether the Court Erred in Not Granting Instruction D-4;**

IX. **Whether the Court Erred in Refusing to Grant Instruction D-3;**

**X. Whether the Application of the Death Penalty Is Discriminatorily Applied to African-Americans in Violation of the Due Process Clause and Equal Protection Clause of the Fourteenth Amendment.**

¶3. On February 12, 1998, Underwood's conviction and death sentence were affirmed by this Court. *See **Underwood v. State**,* 708 So. 2d 18 (Miss. 1998). The statement of facts contained in that opinion is sufficient, and we adopt it here for reference purposes.

¶4. Underwood then sought relief by filing a petition of certiorari with the United States Supreme Court raising a single question:

> Whether the "especially heinous, atrocious, or cruel" aggravating circumstance of the Mississippi capital sentencing statute, as re-defined on an *ad hoc* case-by-case basis by the Mississippi Supreme Court, violates the Eighth and Fourteenth Amendments to the United States Constitution.

The United States Supreme Court returned the petition with instructions to file an affidavit of indigency and refile the petition within sixty days. The petition was never refiled.

¶5. On or about February 15, 1999, a "pro se" petition for post-conviction relief was filed with this Court. The State filed a motion to remand the case to circuit court for appointment of counsel. On February 18, 1999, this Court remanded the case to the Circuit Court of Madison County for appointment of counsel. On April 5, 1999, the State moved to dismiss the post-conviction motion. The Court denied that motion on April 12, 1999. On April 23, 1999, the Circuit Court of Madison County appointed Bentley Conner, and Walter Wood, as counsel. Five motions for time were filed by counsel and on November 23, 1999, counsel for Underwood moved to withdraw based on lack of qualifications to handle a death penalty post-conviction and requested the briefing schedule be suspended pending disposition of the

motions to withdraw. On December 7, 1999, this Court entered an order suspending the deadlines in this case, pending disposition of the motions to withdraw.

¶6. On December 21, 2000, this Court entered an order finding counsel should be allowed to withdraw. The Court also noted the passage of legislation creating the Office of Capital Post-Conviction Counsel and the amendment of M.R.A.P. 22 dealing with procedures in death penalty post-conviction matters. The Court ordered James Craig, as counsel for Underwood, to file a status report according to Rule 22. Craig filed the status report as ordered on January 5, 2001.

¶7. On March 7, 2001, this Court entered an order formally appointing Craig as counsel for Underwood and directing that the post-conviction application be filed within 180 days of the order. On July 29, 2003, Underwood filed with this Court, a motion for an extension time within which to file an amended and restated post-conviction petition. Presiding Justice Waller subsequently granted Underwood's motion and further ordered that the amended petition was to be filed on or before October 27, 2003. On October 27, 2003, Underwood filed a motion with this Court requesting an additional extension of time. Chief Justice Smith subsequently granted Underwood's motion and ordered the amended petition to be filed on or before October 22, 2004. The amended and restated application for leave to file motion to vacate conviction and sentence was eventually filed with this Court on October 26, 2004. Underwood's petition raises the following issues:

    **I.**     **Failure to Raise *Batson* Claim.**

    **II.**     **Failure to Utilize Expert Assistance.**

4

**III.** **Failure to Object to Comment on Petitioner's Exercise of His Privilege Against Self-incrimination.**

**IV.** **Ineffective Representation with Respect to Suppression Hearing.**

**V.** **Failure to Submit Felony-manslaughter Instruction.**

**VI.** **Failure to Challenge "Especially Heinous, Atrocious or Cruel Aggravating Circumstance.**

**VII.** **Failure to Investigate Guilt Phase Issues.**

**VIII.** **Failure to Investigate Mitigation Evidence.**

**IX.** **The Mississippi Supreme Court's Proportionality Review Violated Petitioner's Eighth and Fourteenth Amendment Rights.**

¶8. The State filed its response on February 18, 2005.

¶9. We find that Underwood failed to file his amended petition on or before October 22, 2004, as ordered by this Court. Thus, this matter is procedurally barred due to Underwood's noncompliance with this Court's order. Nevertheless, alternatively we will still address the merits of each issue raised in the present appeal.

¶10. After due consideration, we find that Issues I-VIII, all dealing with ineffective assistance of counsel, are without merit. We further find no merit as to Issue IX, Proportionality Review, under the Eighth and Fourteenth Amendments to the United States Constitution. Accordingly, we hold that Underwood's Petition for Post-Conviction Relief is without merit and is denied.

**ANALYSIS**

¶11. Issues I - VIII of Underwood's petition all claim that the defense counsel rendered ineffective assistance of counsel during the trial. In considering claims of ineffective

5

assistance of counsel, this Court follows the standard provided in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984):

> 'The benchmark for judging any claim of ineffectiveness [of counsel] must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.' *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A defendant must demonstrate that his counsel's performance was deficient *and* that the deficiency prejudiced the defense of the case. *Id*. at 687, 104 S. Ct. 2052. 'Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.' *Stringer v. State*, 454 So. 2d 468, 477 (Miss.1984) (citing *Strickland v. Washington*, 466 U.S. at 687, 104 S. Ct. 2052). The focus of the inquiry must be whether counsel's assistance was reasonable considering all the circumstances. *Id.*

> Judicial scrutiny of counsel's performance must be highly deferential. (citation omitted) ... A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' *Stringer*, 454 So.2d at 477 (citing *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065). Defense counsel is presumed competent.

*Knox v. State*, 901 So. 2d 1257, 1261-62 (Miss. 2005).

¶12.    To determine the second prong of prejudice to the defense, the standard is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Mohr v. State*, 584 So. 2d 426, 430 (Miss. 1991). This means a "probability sufficient to undermine the confidence in the outcome." *Id*. The question here is: "whether there is a reasonable probability that, absent the errors, the sentencer–including an appellate court, to the extent it independently reweighs the evidence–would have concluded

that the balance of the aggravating and mitigating circumstances did not warrant death." *Strickland*, 466 U.S. at 695, 104 S. Ct. at 2068.

¶13.    There is no constitutional right to errorless counsel. See *Cabello v. State*, 524 So.2d 313, 315 (Miss.1988); *Mohr v. State*, 584 So.2d at 430 (right to effective counsel does not entitle defendant to have an attorney who makes no mistakes at trial; defendant just has right to have competent counsel). If the post-conviction application fails on either of the *Strickland* prongs, the proceedings end.    *Neal v. State*, 525 So. 2d 1279, 1281 (Miss. 1987); *Mohr v. State*, 584 So. 2d at 430.   Therefore, we will examine Issues I - VIII using the standards for ineffective assistance of counsel set forth above.

### I.  Failure to Raise *Batson* Claim.

¶14.    Underwood argues the prosecution in this case exercised its peremptory challenges to in order to eliminate African-American jurors from the venire.   In addition, he charges that during the trial his counsel did not preserve or raise any objection to the prosecution's challenges under *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986), and that counsel's failure to do so constituted ineffective assistance of counsel.

¶15.    The Court in *Batson* stated that the same equal protection principles that apply to the selection of venire also "govern the State's use of peremptory challenges to strike individual jurors from the petit jury." *Id*.   This prohibits the prosecution from excluding members of the defendant's race from the jury based solely on their race.   In order for the defendant to make a prima facie case of purposeful discrimination, he must meet the burden laid out by the *Batson* Court.   He must show that (1)  he is a member of a cognizable racial group, (2) that the

7

prosecutor has exercised peremptory challenges to remove members of the defendant's race from the venire and (3) such facts "and any other relevant circumstances raise an inference" the prosecutor used those peremptory challenges to exclude potential jurors based on account of their race. *Id*. at 80.

¶16. Underwood is clearly a member of a cognizable racial group. However, as the State correctly points out here, Underwood has not presented any evidence (such as jury lists or affidavits) to support this particular claim or given any explanation as to their absence from the pleading. In their response, the State cites *Bishop v. State*, 882 So. 2d 135, 146 (Miss. 2004), which held: "[t]he State argues that this issue must be summarily dismissed because Bishop failed to allege, with specificity, facts showing ineffective assistance of counsel. This Court agrees. Bishop's allegation of ineffective assistance of counsel 'lack[s] the specificity and detail required to establish a prima facie showing.'" *Ford v. State*, 708 So. 2d 73, 75 (Miss. 1998) (citing *Smith v. State*, 434 So. 2d 212, 219 (Miss. 1983); Miss. Code Ann. §§ 99-39-11(2) and 99-39-9(1)(c)). *See also Wilcher v. State*, 863 So. 2d 719, 742 (Miss. 2003). Underwood has failed to do this; hence he has not meet the burden of proof set forth in *Batson*.

¶17. As previously noted, at the beginning of this analysis, Petitioner is actually claiming ineffective assistance of counsel. "To establish a claim for ineffective assistance of counsel a petitioner must prove that under the totality of circumstances (1) the counsel's performance was deficient and (2) the deficient performance deprived the defendant of a fair trial." *Berry v. State,* 882 So. 2d 157, 161 (Miss. 2004) (citing *Strickland v. Washington,* 466 U.S. at 687). Since Underwood has not shown specific facts or affidavits which establish that the

8

prosecution's peremptory challenges were racially motivated, there is no evidence that counsel's lack of action constituted ineffective assistance of counsel. Underwood's claim is not meritorious.

## II.     Failure to Utilize Expert Assistance.

¶18.    During the initial phase of the murder trial, Underwood's defense counsel stated that Underwood was incompetent to stand trial and filed a motion for appointment of an independent psychiatrist. The circuit court sent Underwood to the Mississippi State Hospital at Whitfield for examination by mental health experts. *Underwood v. State*, 708 So. 2d at 25. After the hearing, the circuit court determined that Underwood's motion for psychiatric assistance should be granted and ordered that he be evaluated by a psychiatrist at the Region 8 Mental Health Center of Madison County. *Id*. However, no report from that facility was ever tendered to the Court. *Id*. Underwood claims that because no report was given to the court, this Court found the appellate claim of incompetence to be without merit. *Id*. at 27.

¶19.    Citing *Brown v. State*, 749 So.2d 82, 90-91 (Miss. 1999), Underwood claims that failure to utilize expert assistance may be grounds for vacating a death sentence. In *Brown,* relief was granted due to the fact that no mitigation evidence from a psychological expert was provided to the jury. *Id*. at 93. However, this case is distinguished from *Brown* since Underwood was given a mental evaluation by the Mississippi State Hospital and was found competent to stand trial. *Underwood,* 708 So. 2d at 25. Therefore, a report was furnished to the court to determine competency. Brown was never given a psychological evaluation.

¶20. In its response, the State again refers to this Court's ruling in **Bishop** maintaining that Underwood has not supported his claims with sufficient evidence, in violation of Miss. Code Ann. § 99-39-9. The State also asserts that the present counsel has had ample time to produce such supporting evidence but has failed to do so.

¶21. Underwood has not shown specific facts or affidavits establishing that his trial counsel's lack of action constituted ineffective assistance of counsel. His reliance on the outcome in **Brown** is misplaced for the reasons stated above. This issue is without merit.

### III. Failure to Object to Comment on Petitioner's Exercise of His Privilege Against Self-incrimination.

¶22. Underwood did not testify at the trial nor did the defense counsel call any witnesses during the guilt phase of the trial. During closing arguments, the prosecution stated: "do not divert yourselves from the uncontradicted facts that came into this courtroom from those 15 witnesses who came in here and from witnesses who, now, they put on trial."

¶23. Underwood argues that this statement brought attention to the fact he did not testify, in violation of his constitutional right against self-incrimination. *Griffin v. California*, 380 U.S. 609, 85 S. Ct. 1229, 14 L. Ed. 2d 106 (1965). Therefore, defense counsel rendered ineffective assistance by failing to object or move for mistrial during the prosecution's closing arguments. It is also argued that failure to raise this issue on appeal also constituted ineffective assistance of counsel. Since the issue of the prosecution's closing arguments was not brought at trial or on appeal, the substance of this claim is procedurally barred. Miss. Code Ann. § 99-39-21 (1) (Supp. 2004) provides:

> Failure by a prisoner to raise objections, defenses, claims, questions, issues or
> errors either in fact or law which were capable of determination at trial and/or

10

on direct appeal, regardless of whether such are based on the laws and the Constitution of the state of Mississippi or of the United States, shall constitute a waiver thereof and shall be procedurally barred, but the court may upon a showing of cause and actual prejudice grant relief from the waiver.

However, we will address the issue of ineffective counsel as it pertains to the claim. The State cites *Howell v. State,* 860 So. 2d 704 (Miss. 2003), regarding claims based upon comments on the failure to testify. *Howell* notes that attorneys are given "wide latitude" in developing their closing arguments and there is an inherent difference between a comment on the defendant's failure to testify and a comment on the failure to put on a successful defense. *Id.* at 751-52. The State charges that the comment was nothing more than a comment on the lack of defense so it was not objectionable.

¶24. The prosecution's statement during closing arguments was merely a comment on the State's witnesses, their testimony and the lack of defense put on by their opponent. There is no mention of Underwood at all. On this issue, Underwood again has failed to establish evidence of deficient performance by his defense counsel or a resulting prejudice. Therefore, this issue is without merit and fails.

### IV. Ineffective Representation with Respect to Suppression Hearing.

¶25. While Underwood acknowledges that defense counsel adequately challenged the written statement taken from him regarding the crime with which he was charged, it is argued that counsel's failure to have Underwood testify at the suppression hearings was evidence of ineffective assistance of counsel. Underwood further contends counsel was ineffective on appeal to contend that the invocation of counsel on the burglary charge required suppression of all subsequent statements.

11

¶26. The State argues that Underwood already raised a claim regarding suppression on his confession on direct appeal. This Court decided the claim against him holding that his constitutional rights were not violated since he understood his rights and spoke voluntarily with law enforcement. See *Underwood*, 708 So. 2d at 30-31.

¶27. The State questions the credibility of Underwood's claim since there is no record that he requested the presence of an attorney during questioning. In fact, the two officers present gave sworn testimony that Underwood did not request an attorney during the burglary interrogation. The State also challenges Underwood's claim that he told his attorney he requested counsel during interrogation. The State infers that any attorney would recognize such a clear violation of a defendant's constitutional right had it been brought to his attention.

¶28. There is nothing in the record to explain why Underwood's counsel did not allow him to testify during the suppression hearing. The decision may have been a deliberate trial strategy. It is likely that defense counsel knew there would be credibility issues with Underwood's testimony. This Court does not like to "second guess" an attorney's trial strategy. *See Mohr v. State*, 584 So. 2d at 430. When evaluating the overall performance of counsel, it must be considered that counsel makes strategic discretionary decisions including whether or not to file certain motions, call certain witnesses, ask certain questions, or make certain objections. See *Cole v. State*, 666 So. 2d 767, 777 (Miss. 1995). There is also a strong presumption that the attorney's performance was within the wide range of reasonable, professional, and acceptable conduct. See *Leatherwood v. State*, 473 So. 2d 964, 968-69 (Miss. 1985).

¶29.    Again, Underwood has failed to obtain any evidence, such as an affidavit, confirming that trial counsel had this information and failed to act on it.    Thus, the record does not establish that counsel's actions were deficient.

¶30.    Even if counsel's action were deficient in any manner, Underwood has failed to show any resulting prejudice.    Even if allowed to testify regarding his request for counsel, the credibility of his statement versus the statements of the two police officers would have been a matter for the court to decide. "The circuit court sits as a fact finder when determining voluntariness of a confession, and its determination will not be reversed unless manifestly wrong." *Horne v. State*, 825 So. 2d 627, 639 (Miss. 2002) (citing *Blue v. State*, 674 So. 2d 1184, 1204 (Miss. 1996)).    Since the court allowed the confession to stand, it is unlikely Underwood's statement that he requested counsel would have convinced the court to rule otherwise.    Therefore, Underwood's claim is without merit.

### V.    Failure to Submit Felony-Manslaughter Instruction.

¶31.    Defense counsel submitted "heat of passion" manslaughter instructions to the circuit court (Instruction D-4).    That instruction was denied by the circuit court and on appeal, this Court affirmed the denial of that instruction.  *Underwood*, 708 So. 2d at 36.    Underwood now claims defense counsel should have also submitted an instruction on the felony-manslaughter statute that was then in effect.  Miss. Code Ann. § 97-3-27.[1]    He claims the failure to offer this instruction was ineffective assistance of trial counsel, as was the failure to raise the issue on

---

[1] Underwood mistakenly refers to the felony-manslaughter statute in his petition as Miss. Code Ann. § 97-5-39(2).  The correct statute appears above and went into effect on August 23, 1994.

13

appeal. He argues if the jury believed the entirety of his alleged statement, it would have concluded the killing occurred as the result of a request for assisted suicide.

¶32. The State asserts that Underwood's theory of the case is an "unbelievable scenario" and that it is unlikely the jury's outcome would have changed. The State accurately notes that this Court has already held on direct appeal that taking Underwood's confession as true would support a conviction of murder. "A lesser-included offense instruction is appropriate only in those cases where a jury could find the defendant not guilty of the principal charge but guilty of a lesser offense." *Brown*, 749 So. 2d at 89 (citing *Evans v. State,* 725 So. 2d 613, 664 (Miss. 1997); *Davis v. State,* 684 So. 2d 643, 656-57 (Miss. 1996)).

¶33. This claim lacks merit.

### VI. Failure to Challenge "Especially Heinous, Atrocious or Cruel" Aggravating Circumstance.

¶34. Underwood alleges that since defense counsel did not object to the jury instruction with respect to the "especially heinous, atrocious or cruel" aggravating circumstance, nor raise the issue on appeal, this constituted ineffective assistance of counsel. This argument is based on the lack of evidence of how long the victim lived after being shot.

¶35. Underwood cites the concurring in part and dissenting in part opinion of Justice Blackmun in *Clemons v. Mississippi,* 494 U.S. 738, 755-74, 110 S. Ct. 1441, 1452-62, 108 L. Ed. 2d 725 (1990), which concluded that this aggravator was constitutionally invalid because it was applied without limitation in Mississippi.

¶36. In its reply, the State makes mention of this Court's review of this issue upon direct appeal. In that opinion, this Court noted that the length of the victim's life and her

14

consciousness is not "dispositive on appeal." *Underwood*, 708 So. 2d at 40. "Justice demands that the focus remain strictly on the defendant. Underwood's culpability can only be measured by his own mental state and actions." *Id*. at 39.

¶37. This Court held that the jury properly found the murder to be especially heinous, atrocious and cruel. *Id*. There was substantial evidence to support the sentence based on the aggravating factors, including the fact that the murder was committed during the course of a kidnapping.

¶38. Thus, Underwood's trial counsel was not deficient in failing to object to the instruction. Additionally, there is also no proof submitted by Underwood that the outcome of the jury verdict would have been different had his defense counsel objected. This claim is without merits.

### VII. Failure to Investigate Guilt Phase Issues.

¶39. Underwood contends that although defense counsel argued at trial that someone other than Underwood murdered Mrs. Harris, counsel did not conduct his own investigation into that theory. Underwood argues that the failure to do so constituted ineffective assistance of counsel.

¶40. Again, the State points out that Underwood submitted no affidavits or facts to support his claim. The State cites *Puckett v. State*, 879 So. 2d 920, 936-37 (Miss. 2004), where the defendant offered nothing in the way of proof that his defense counsel was ineffective other than a conclusory allegation and this Court found the lack of evidence fatal to the claim. The State, also referring to *Bishop*, contends that the Underwood's allegation that counsel failed to investigate a defense theory lacked the "specificity and detail" necessary to establish a prima

facie showing of ineffective assistance of counsel. 882 So. 2d at 146. This issue is without merit.

### VIII. Failure to Investigate Mitigation Evidence.

¶41. Underwood claims that defense counsel did not conduct an investigation into the statutory mitigating circumstances under Mississippi law or investigate any non-statutory mitigating circumstances. Underwood also notes that counsel's failure to use a mental health expert to assist in the investigation of mitigating circumstances constitutes ineffective assistance of counsel.

¶42. The State argues that Underwood has not produced any affidavits, names of witnesses or any facts to support these conclusory allegations. The State also mentions the four years which present counsel had to obtain evidence to support such claims. The State again cites *Puckett* and *Bishop* to support the dismissal of this claim for lack of support. In addition, the State points to its comments raised in Issue II noting that the failure to use the mental health expert appointed by the trial court is also a conclusory allegation and should be summarily dismissed.

¶43. We agree that Underwood has not given specific facts or affidavits to adequately show that counsel's lack of action constituted ineffective assistance of counsel. This issue is without merit.

### IX. This Court's Proportionality Review.

¶44. Underwood argues that while this Court conducted a proportionality review of his death sentence, it improperly did so by applying the "especially heinous, atrocious or cruel"

16

aggravating factor. In doing so, he argues that this Court "violated Petitioner's rights under the Eighth and Fourteenth Amendments."

¶45. The State argues that the aggravating circumstance was properly submitted to the jury and again noted that this Court stated in the opinion that the jury properly found the murder to be "especially heinous, atrocious, or cruel." *Underwood*, 708 So. 2d at 39.

¶46. As stated, Underwood is not entitled to relief under Issue VI and, therefore, the review of this Court was proper. This Court did not err in including the "especially heinous" aggravator in making its proportionality analysis. Underwood is entitled to no relief on this issue.

## CONCLUSION

¶47. "To establish a claim for ineffective assistance of counsel a petitioner must prove that under the totality of circumstances (1) the counsel's performance was deficient and (2) the deficient performance deprived the defendant of a fair trial." *Berry*, 882 So. 2d at 161. Issues I - VIII all deal with various claims of ineffective assistance of counsel by Underwood. However, each of these issues is without merit.

¶48. As to the proportionality review, there is not a violation of Underwood's rights under the Eighth and Fourteenth Amendments. Therefore, this issue is also found to be without merit.

¶49. Therefore, Underwood's Petition for Post-Conviction Relief and his Amended and Restated Application for Leave to File Motion to Vacate Conviction and Sentence are without merit and are denied. We deny Underwood him leave to seek post-conviction relief.

¶50. **LEAVE TO SEEK POST-CONVICTION RELIEF DENIED.**

17

**WALLER AND COBB, P.JJ., EASLEY, CARLSON, GRAVES, DICKINSON AND RANDOLPH, JJ., CONCUR.  DIAZ, J., NOT PARTICIPATING.**